UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| A.M., on behalf of her minor son, T.S.,<br><br>　　　　　　　Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK; RICHARD MCKNIGHT; EDMUNDO RIVERA; BRIAN MAHON; and DANIEL CAMPBELL, in their individual capacities,<br><br>　　　　　　　Defendants. | No. 20-CV-10630<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

### PRELIMINARY STATEMENT

1.      On September 1, 2020, T.S. was 16 years old and was about to begin his junior year of high school.

2.      At approximately 6:20 p.m., T.S. logged off an online meeting of a youth advocacy group and got ready for the short walk between his mother's and grandmother's apartments.

3.      While T.S. was on his way from his mother's apartment to his grandmother's, four plainclothes NYPD officers—the named Defendants—spotted T.S. from their moving SUV.

4.      They pulled their unmarked vehicle over.

5.      They asked T.S. where he was walking so fast.

6.      T.S. replied that he was walking to his grandmother's apartment.

7.      Three of the officers then exited the SUV and surrounded T.S.

8.      They asked T.S. if he had crack cocaine on him.

9.      They asked T.S. if he had a gun in his fanny pack.

10.     T.S. replied he did not have drugs or a gun.

11.     "You look like you have a gun," one officer commented.

12.     T.S. is African-American.

13.     One officer searched T.S.'s body and clothes.

14.     Another unzipped T.S.'s fanny pack and searched its contents.

15.     Neither officer found drugs.

16.     Neither officer found a gun.

17.     Neither officer found any contraband at all.

18.     And so the officers left.

19.     They did not leave T.S. with a PD 383-153 receipt or "Right to Know" Business Card, the official record that NYPD officers are required to issue to any person they stop, absent exigent circumstances that did not exist here.

20.     They did not tell T.S. their names or provide him their shield numbers.

21.     They did not leave T.S. with any record of the interaction.

22.     Instead, they left T.S. with fear—fear when he hears a siren, fear when he sees cops on the street, and fear about what might happen the *next* time he is unjustifiably stopped by the police.

23.     Hundreds of black children in New York City experience this kind of unnecessary, traumatizing, and dehumanizing harassment by police every day.

24.     Unbeknownst to the defendants, this particular instance of harassment happened to be captured entirely on video.

25.     T.S. brings this lawsuit to stand up for himself, for his constitutional rights, and for countless kids like him who have suffered the same mistreatment.

26.     He brings this lawsuit because the City of New York spectacularly failed to adequately supervise and discipline the officers who violated his constitutional rights, despite their extensive and well-documented histories of similar misconduct.

## JURISDICTION AND VENUE

27.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a) and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

28.     Venue lies in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because the incident occurred in Manhattan.

## PARTIES

29.     Plaintiff T.S. is sixteen years old and appears in this action by and through his mother, A.M.

30.     Defendant City of New York is a municipal corporation organized under the laws of New York with its principal place of business in Manhattan.

31.     Defendant Richard McKnight is a Police Officer with the New York Police Department, Narcotics Borough Manhattan North. On information and belief his shield number is 7955.

32.     Defendant Edmundo Rivera is a Police Officer with the New York Police Department, Narcotics Borough Manhattan North. On information and belief his shield number is 696.

33.     Defendant Brian Mahon is a Police Officer with the New York Police Department, Narcotics Borough Manhattan North. On information and belief his shield number is 26892.

34.     Defendant Daniel Campbell is a Captain with the New York Police Department, Detective Borough Manhattan North.

35.     Defendant McKnight is identified by red circles in the video stills below. Defendant Rivera is identified by blue circles. Defendant Mahon is identified by yellow circles. Defendant Campbell is identified by a green circle. T.S. is pictured wearing a white t-shirt and blue pants.

 

36.     Defendants McKnight, Rivera, Mahon, and Campbell are herein collectively referred to as the "Individual Defendants."

37.     Upon information and belief, the Individual Defendants reside in the Southern and/or Eastern District of New York in compliance with the New York Police Department's residency requirements.[1]

38.     The Individual Defendants are sued in their individual capacities.

**JURY DEMAND**

39.     Plaintiff demands a jury trial.

---

[1]     *See* NYPD, Hiring Process: Requirements, https://www1.nyc.gov/site/nypd/careers /police-officers/po-hiring.page (last accessed Apr. 2, 2021).

4

## NOTICE OF CLAIM

40.     Within 90 days after the claim arose, Plaintiff duly served a written Notice of Claim upon Defendant City of New York, which set out the nature of the claim, the time when and the place where and manner by which the claim arose, and the damages and injuries claimed to have been sustained by Plaintiff.

41.     A hearing pursuant to General Municipal Law § 50-h was held on December 7, 2020.

## FACTS

### *On a Brief Walk from His Mother's to His Grandmother's Apartment, T.S. Is Unlawfully Stopped by Four Plainclothes Officers in an Unmarked SUV*

42.     On the evening of September 1, 2020, T.S. departed his mother's apartment, at 139 West 116th Street, and began walking toward his grandmother's apartment, at 200 West 113th Street.

43.     The two apartments are just three blocks apart, and the walk typically takes T.S. less than five minutes.

44.     As T.S. walked west along the south side of West 116th Street, an unmarked SUV, driving east, slowed down and came to a halt in front of approximately 164 West 116th Street.

45.     From the passenger window of the SUV, Officer McKnight called out something to T.S. T.S. immediately stopped walking and removed the headphones he was wearing.



46.     Officer McKnight did not identify himself as a police officer.

47.     T.S. wondered for a moment whether he was being robbed or was about to be attacked.

48.     Officer McKnight asked T.S., in sum and substance, where T.S. was walking so fast.

49.     T.S. answered, in sum and substance, that he was walking to his grandmother's apartment.

50.     Officers McKnight, Rivera, and Mahon then exited the SUV and walked over to T.S., surrounding him. Officer McKnight stood immediately in front of T.S. Officer Rivera stood directly behind T.S. Officer Mahon stood immediately to T.S.'s left. Captain Campbell remained in the driver's seat of the SUV.



51.     T.S. was momentarily grateful there were bystanders around. But that gratitude quickly transitioned to humiliation. T.S. knew the passers-by were wondering what crime he has committed. He felt ashamed.

52.     More than that, T.S. felt afraid.

### *Three NYPD Officers Surround T.S. and Unlawfully Search His Person and Belongings, Not Finding Any Contraband*

53.     Officer McKnight asked T.S., in sum and substance, whether T.S. had drugs in his fanny pack.

54.     T.S. replied, in sum and substance, that he did not.

55.     Officer McKnight then reached around T.S. and began feeling the exterior of T.S.'s fanny pack.

56.     Officer McKnight asked T.S., in sum and substance, whether T.S. had crack cocaine in his fanny pack.

57.      T.S. replied, in sum and substance, that he did not.

58.     Officer McKnight then unclipped T.S.'s fanny pack and passed it to Officer Rivera, who was standing directly behind T.S.



59.     T.S. asked Officer McKnight, in sum and substance, why he had been stopped. By way of a reply, Officer McKnight asked T.S., in sum and substance, whether T.S. had a gun in his fanny pack.

60.     T.S. replied, in sum and substance, that he did not.

61.     "You look like you have a gun," Officer McKnight commented.

62.     Officer McKnight proceeded to search T.S., beginning with T.S.'s waist and groin area, proceeding down T.S.'s legs, and concluding after searching T.S.'s torso.



63.     T.S. did not consent to being stopped by police or to the search of his person.

64.     Contemporaneous with Officer McKnight's questioning and search of T.S.'s person, Officer Rivera unzipped T.S.'s fanny pack, peered inside, and rummaged around.

 

65.     Officer Rivera's search of T.S.'s fanny pack far exceeded the scope of a protective pat-down for officer safety.

66.     T.S. did not consent to the search and/or seizure of his fanny pack.

67.     29 seconds after beginning his search of T.S.'s fanny pack, Officer Rivera handed the fanny pack back to T.S.

68.     Officers McKnight, Rivera, and Mahon returned to the SUV.

69.     They did not provide T.S. with a Form PD-383-153, "Right to Know" Business Card, or any other written record of the interaction.

70.     They did not tell T.S. their names or provide him their shield numbers.

71.     At no time during the series of events did any of the Individual Defendants have reasonable suspicion or probable cause to believe that T.S. had committed a crime.

72.     At no time during the series of events did any of the Individual Defendants have reasonable suspicion to believe that T.S. was armed, dangerous, and/or posed a threat to officer safety.

73.     At no time during the series of events did the Individual Defendants have a warrant for T.S.'s arrest or for the search of any of his property.

74.     Officers McKnight, Rivera, and Mahon were obligated to obey any lawful order Captain Campbell gave them.

75.     At no time during the relevant events did Captain Campbell order Officers McKnight, Rivera, and/or Mahon to cease their unlawful actions.

76.     On information and belief, Defendant Campbell, the highest-ranking member of service present and the driver of the vehicle, ordered the stop, detention, search, and/or seizure of T.S.

### *In the Aftermath, T.S. Grapples with Nightmares, Anxiety, and Fear*

77.     After the officers left, T.S. walked the rest of the way to his grandmother's. T.S. originally felt bad for himself: He felt he had been unlucky.

78.     But, on refection, T.S. realized he was, in reality, *very* lucky: The officers had not planted evidence on him; he had not wound up spending the night in jail or lying on the sidewalk with a gun to his head. T.S. is afraid that he might not be so lucky if he stopped and searched without justification again.

79.     When T.S. told his mother, A.M., about what had happened, she was distraught. T.S. knew he had done nothing wrong, but he felt terrible about it anyway.

80.     Over the following days, and then weeks and months, T.S. kept replaying the event over and over in his mind. T.S. was anxious when he heard sirens, saw police on the street, or saw a car slow down in front of him.

81.     T.S. has experienced nightmares and remains anxious and frightened as a result of the incident.

### The Individual Defendants' Extensive History of Misconduct

82.     Between them, Defendants Rivera, Mahon, and Campbell have been the defendants in at least 24 different lawsuits alleging deprivation of civil rights, including as co-defendants in multiple lawsuits.

83.     These 24 lawsuits have been either been settled, or else remain pending. On information and belief, in not a single one did the Individual Defendants prevail.

84.     Many of these 24 lawsuits bear striking resemblance to the instant action, involving false arrests, as well as unlawful stops, frisks, and searches—including of African-American teenagers.

85.     Between them, Defendants Rivera, Mahon, and Campbell have been the subjects of at least 83 allegations to the Civilian Complaint and Review Board (CCRB).

86.     The allegations similarly bear striking resemblance to the instant action, involving unlawful stops, frisks, and searches, as well as refusals to provide shield numbers and false arrests.

87.     They have been exonerated in only fourteen of these 83 instances.

### Defendant Rivera

88.     In the past six years, Officer Rivera has been the subject of at least 35 allegations to the CCRB.[2]

89.     The CCRB has substantiated seven of these allegations and has exonerated Officer Rivera in only nine instances.

---

[2]     *See* ProPublica, The NYPD Files: Officer Edmundo Rivera, https://projects.propublica.org/nypd-ccrb/officer/6373-edmundo-rivera (last accessed Apr. 2, 2021).

90.     In four instances, the CCRB found Officer Rivera to have abused his authority by conducting an unlawful search.

91.     In three instances, the CCRB found Officer Rivera to have abused his authority by conducting an unlawful stop.

92.     The CCRB did not exonerate Officer Rivera for his conduct in an additional eleven instances in which he was alleged to have abused his authority, including, without limitation, by unlawfully conducting stops, frisks, and searches; by refusing to provide his shield number; by drawing his firearm without adequate justification; by improperly threatening force; by conducting a strip search without adequate justification; and by neglecting to provide medical treatment.

93.     The CCRB similarly did not exonerate Officer Rivera for his conduct in an additional seven instances in which he was alleged to have used excessive force, including, without limitation, by unlawfully applying chokeholds and otherwise restricting breathing; by drawing and pointing his firearm without adequate justification; and by unlawfully applying other excessive physical force.

94.     The current action notwithstanding, in the last six years Officer Rivera has been a defendant in at least fifteen lawsuits alleging deprivation of civil rights.[3]

95.     In *Williams v. City of New York*, No. 28334/2020E (Bronx County Sup. Ct. August 3, 2020), the plaintiff alleged Officer Rivera unlawfully stopped, searched, assaulted, and falsely arrested the plaintiff. The case is currently pending.

96.     In *Marrero v. City of New York*, No. 35001/2019E (Bronx County Sup. Ct. December 19, 2019), the plaintiff alleged Officer Rivera unlawfully stopped, searched,

---

[3]     *See* CAPstat, NYC Federal Civil Right Lawsuit Data: Officer Edmundo Rivera, https://www.capstat.nyc/officer/p85640/ (last accessed Apr. 2, 2021).

assaulted, and falsely arrested the plaintiff. On information and belief, the case was settled.

97.     In *Huntley v. City of New York*, No. 32341/2019E (Bronx County Sup. Ct. October 21, 2019), the plaintiff alleged Officer Rivera unlawfully stopped, searched, assaulted, and falsely arrested the plaintiff. On information and belief, the case was settled.

98.     In *Grant v. City of New York*, No. 32159/2018E (Bronx County Sup. Ct. October 24, 2018), the plaintiff alleged Officer Rivera unlawfully stopped, searched, assaulted, and falsely arrested the plaintiff. The case was settled.

99.     In *Gonzalez v. City of New York*, No. 1:18-CV-07488 [PKC] (S.D.N.Y September 16, 2018), the plaintiffs alleged that Officer Rivera—alongside Captain Campbell—unlawfully stopped and arrested the plaintiffs in the vicinity of an earlier shooting, during which someone had shot a BB gun at a police car, in order to demonstrate what happened when police officers were "disrespected"—despite the fact the suspects for that shooting had been apprehended. The facts are strikingly similar to the instant case: Without due cause, Officer Rivera and Captain Campbell stopped their vehicle and preceded to surround and harass the plaintiffs. The case was settled.

100.     In *Tineo v. City of New York,* No. 1:17-CV-07910 [NRB] (S.D.N.Y. October 13, 2017), the plaintiff alleged Officer Rivera conducted an unlawful stop, assaulted and falsely arrested the plaintiff, and fabricated or acquiesced to the fabrication of the relevant evidence and police reports. The case was settled.

101.     In *Polanco v. City of New York*, No. 26382/2016E (Bronx County Sup. Ct. December 29, 2016), the plaintiff alleged Officer Rivera unlawfully stopped, assaulted, and falsely arrested the plaintiff. On information and belief, the case was settled.

102.    In *Torres v. City of New York,* No. 26382/2016E (Bronx County Sup. Ct. September 20, 2016), the plaintiff alleged Officer Rivera conducted an unlawful stop, searched the plaintiff without due cause, and assaulted and falsely arrested the plaintiff. On information and belief, the case was settled.

103.    In *Delgado v. City of New York*, No. 25772/2020E (Bronx County Sup. Ct. June 15, 2016), the plaintiff alleged Officer Rivera unlawfully assaulted and falsely arrested plaintiff. On information and belief, the case was settled.

104.    In *Kuta v. City of New York*, No. 22006/2016E (Bronx County Sup. Ct. March 23, 2016), the administrator of decedent Hakeem Kuta's estate alleged Officer Rivera, alongside another officer, in an attempt to effectuate an arrest for possession of marijuana, chased the decedent—an African American teenager—to the roof of the building, at which point one of the officers drew his firearm, causing the decedent to step back and fall off the rooftop to his death. It is unclear from the public record which officer drew his firearm. The CCRB has received four allegations to the effect that Officer Rivera improperly drew his weapon, of which Officer has been exonerated in only two instances. On information and belief, the case was settled.

105.    In *Lucero v. City of New York*, No. 304151-2015 (Bronx County Sup. Ct. October 21, 2015), the plaintiffs alleged Officer Rivera—alongside Officer Mahon— unlawfully stopped, searched, assaulted, and falsely arrested plaintiffs, including by drawing his firearm without adequate justification. On information and belief, the case was settled.

106.    In *Miranda v. City of New York*, No. 304119-2015 (Bronx County Sup. Ct. September 28, 2015), the plaintiff alleged Officer Rivera unlawfully stopped, searched,

assaulted, and falsely arrested the plaintiff. On information and belief, the case was settled.

107.    On information and belief, Officer Rivera has been a defendant in additional lawsuits alleging deprivation of civil rights, including *Zayas v. City of New York*, No. 23407/2016E (Bronx County Sup. Ct. May 19, 2016); *Ramirez v. City of New York,* No. 304696-2015 (Bronx County Sup. Ct. 2015); and *Gomez v. City of New York*, No. 302450-2015 (Bronx County Sup. Ct. 2015).

*Defendant Mahon*

108.    In the past four years, Officer Mahon has been the subject of at least sixteen allegations to the CCRB.[4]

109.    The CCRB has substantiated five of these allegations and has exonerated Officer Mahon in zero instances.

110.    In two instances, the CCRB found Officer Mahon to have abused his authority by conducting an unlawful frisk.

111.    In one instance, the CCRB found Officer Mahon to have abused his authority by conducting an unlawful stop.

112.    In two instances, the CCRB found Officer Mahon to have otherwise abused his authority.

113.    The CCRB did not exonerate Officer Mahon for his conduct in an additional ten instances in which he was alleged to have abused his authority, including, without limitation, by unlawfully conducting stops and searches; by refusing to provide his shield number; by drawing his firearm without adequate justification; by conducting

---

[4]      *See* ProPublica, The NYPD Files: Officer Brian Mahon, https://projects.propublica.org/nypd-ccrb/officer/25587-brian-mahon (last accessed Apr. 2, 2021).

a strip search without adequate justification; and by entering premises without adequate justification.

114.     The CCRB similarly did not exonerate Officer Mahon for his conduct in an additional instance in which he was alleged to unlawfully applied excessive physical force.

115.     The current action notwithstanding, in the last seven years Officer Mahon has been a defendant in at least seven lawsuits alleging deprivation of civil rights.[5]

116.     In *Campbell v. City of New York*, No. 33120/2018E (Bronx County Sup. Ct. November 16, 2018), the plaintiff alleged Officer Mahon unlawfully stopped, searched, assaulted, and falsely arrested the plaintiff. The case was settled.

117.     In *Fernandez v. City of New York*, No. 33114/2018E (Bronx County Sup. Ct. November 16, 2018), the plaintiff alleged Officer Mahon unlawfully stopped, searched, assaulted, and falsely arrested the plaintiff. The case is currently pending.

118.     In *Harris v. City of New York*, No. 1:17-CV-08760 [RJS] (S.D.N.Y. November 10, 2017), the plaintiff alleged Officer Mahon unlawfully searched, assaulted, and falsely arrested the plaintiff, including by grabbing the plaintiff by the throat. The case was settled.

119.     In *Copes v. City of New York*, No. 1:17-CV-08413 [ER] (S.D.N.Y. October 31, 2017), the plaintiff alleged Officer Mahon unlawfully stopped, assaulted, and falsely arrested the plaintiff. The case is currently pending.

---

[5]     *See* CAPstat, NYC Federal Civil Right Lawsuit Data: Officer Brian Mahon, https://www.capstat.nyc/officer/p112206/ (last accessed Apr. 2, 2021).

120.     In *Lucero v. City of New York*, No. 304151-2015 (Bronx County Sup. Ct. October 21, 2015), the plaintiffs alleged Officer Mahon—alongside Officer Rivera — unlawfully stopped, searched, assaulted, and falsely arrested the plaintiff, including by drawing his firearm without adequate justification. On information and belief, the case was settled.

121.     In *Pruitt v. City of New York*, No. 1:14-CV-00412 [GHW] (S.D.N.Y January 23, 2014), the plaintiff alleged Officer Mahon unlawfully stopped, assaulted, and falsely arrested the plaintiff. The case was settled. *See Pruitt v. City of New York*, No. 1:14-CV-03969 [JBW-VVP] (E.D.N.Y June 6, 2014).

122.     On information and belief, Officer Mahon has been a defendant in an additional lawsuit alleging deprivation of civil rights, *Oden v. City of New York*, No. 300134-2016 (Bronx County Sup. Ct. 2016).

*Defendant Campbell*

123.     Captain Campbell has been the subject of at least 32 allegations to the CCRB.[6]

124.     The CCRB has substantiated two of these allegations and has exonerated Captain Campbell in only five instances.

125.     In one instance, the CCRB found Captain Campbell to have abused his authority by conducting an unlawful frisk.

126.     In one instance, the CCRB found Captain Campbell to have abused his authority by unlawfully threatening arrest.

---

[6]     *See* ProPublica, The NYPD Files: Captain Daniel Campbell, https://projects.propublica .org/nypd-ccrb/officer/19469-daniel-campbell (last accessed Apr. 2, 2021).

127.    The CCRB did not exonerate Captain Campbell for his conduct in an additional fifteen instances in which he was alleged to have abused his authority, including, without limitation, by unlawfully conducting stops and searches; by refusing to provide his shield number; by improperly questioning; by entering premises without adequate justification; by improperly damaging property; and by neglecting to provide medical treatment.

128.    The CCRB similarly did not exonerate Captain Campbell for his conduct in an additional five instances in which he was alleged to have used excessive force, including, without limitation, by unlawfully applying chokeholds and by unlawfully applying other excessive physical force.

129.    Notwithstanding the current action, in the last ten years Captain Campbell has been a defendant in at least four lawsuits alleging deprivation of civil rights.[7]

130.    In *Gonzalez v. City of New York*, No. 1:18-CV-07488 [PKC] (S.D.N.Y September 16, 2018), the plaintiffs alleged Captain Campbell—alongside Officer Rivera—unlawfully stopped and arrested the plaintiffs in the vicinity of an earlier shooting, during which someone had shot a BB gun at a police car, in order to demonstrate what happened when police officers were "disrespected"—despite the fact the suspects for that shooting had been apprehended. The case was settled.

131.    In *Gordon v. City of New York*, No. 1:15-CV-06365 [ARR-LB] (E.D.N.Y. November 5, 2015), the plaintiffs alleged Captain Campbell conducted an unlawful search, falsely arrested the plaintiffs, and fabricated or acquiesced to the fabrication of the relevant evidence. The case was settled.

---

[7]     *See* CAPstat, NYC Federal Civil Right Lawsuit Data: Captain Daniel Campbell, https://www.capstat.nyc/officer/p14164/ (last accessed Apr. 2, 2021).

132.    In *Bussey v. City of New York*, No. 1:13-CV-02684 [SLT-RML] (E.D.N.Y. May 5, 2013), the plaintiffs alleged Captain Campbell unlawfully stopped, searched, assaulted, and falsely arrested the plaintiffs. The case was settled.

133.    In *Green v. City of New York*, No. 1:11-CV-05472 [SLT-VVP] (E.D.N.Y. November 8, 2011), the plaintiff alleged Captain Campbell assaulted and arrested the plaintiff. The case was settled.

### What Happened to T.S. was the Inevitable Consequence of New York City's Refusal to Adequately Supervise and Discipline the Individual Defendants

134.    What happened to T.S. on September 1 was not an isolated incident: It was the inevitable consequence of the City of New York's deliberate indifference to the constitutional rights of New Yorkers.

135.    Defendant City of New York spectacularly fails to supervise, discipline, and/or terminate NYPD officers, even for extensive, egregious, and well-documented misconduct.

136.    Under current law, the Police Commissioner has the exclusive authority to determine the final disposition of all disciplinary matters concerning members of the NYPD and to impose discipline.[8] This includes disciplinary authority over cases investigated by both the CCRB and the Internal Affairs Bureau (IAB), those agencies' recommendations notwithstanding.

137.    In January 2019, the Independent Panel on the Disciplinary System of the NYPD (the "Panel") concluded that the Police Commissioner frequently departs from the disposition and penalty recommendations he receives from the CCRB and IAB.

---

[8]    *See* N.Y.C. Charter § 434; N.Y.C Admin. Code § 14-115.

138.    In fact, the Police Commissioner departs from the CCRB's recommended penalties with extraordinary frequency. An analysis published by the *New York Times* in November 2020 found the NYPD "regularly ignored the [CCRB's] recommendations, overruled them or downgraded the punishments, even when police officials confirmed that the officers had violated regulations." Among other things, the *New York Times* report found that this "pattern of lenient punishment holds true for about 71 percent of the 6,900 misconduct charges over the last two decades in which the [CCRB] recommended the highest level of discipline and a final outcome was recorded."[9]

139.    The City of New York has no written guidelines that inform the Commissioner's discretion in making or explaining his decisions. Neither the Commissioner's decisions nor his explanations are made public.

140.    The Panel found Police Commissioner's Change of Penalty Letters do not provide meaningful explanations for departing from the discipline recommended by the CCRB or IAB. It concluded that the Police Commissioner's departures from the recommended discipline and the lack of detailed explanations for those departures "may undermine the legitimacy of the trial process."

141.    The Panel also concluded that favoritism influences the disciplinary process and outcomes, that the disciplinary process involves "unnecessary and excessive" delay, that "the NYPD releases minimal data to the public on disciplinary outcomes or decision making," and that "there is a fundamental and pervasive lack of transparency into the disciplinary process and about disciplinary outcomes."

---

[9]      Ashley Southall, Ali Watkins, and Blacki Migliozzi, *A Watchdog Accused Officers of Serious Misconduct. Few Were Punished*, N.Y. Times, Nov. 15, 2020, https://www.nytimes .com/2020/11/15/nyregion/ccrb-nyc-police-misconduct.html.

142.   Defendant City of New York is aware that its failure to supervise, discipline, and/or terminate NYPD officers—even for extensive, egregious, and well-documented misconduct—frequently results in the deprivation of New Yorkers' civil rights.

143.   Despite such notice, Defendant City of New York has a policy, custom, or usage of failing to adequately discourage future constitutional violations by retaining and/or failing to discipline or supervise NYPD officers—even those, like the Individual Defendants, with egregious, extensive, and well-documented records of misconduct.

144.   As a result of this policy, custom, or usage, NYPD officers, including the Individual Defendants, believe—*know*—their actions are not adequately supervised and will not be adequately scrutinized.

145.   They know that misconduct will not be adequately investigated or sanctioned.

146.   They know it will be ignored and tolerated.

147.   Defendant City of New York was aware, prior to the incident that is the subject of this complaint, that Defendants Rivera, Mahon, and Campbell lack the temperament, objectivity, maturity, discretion, and proper disposition to function lawfully as police officers.

148.   The 24 aforementioned lawsuits brought against the Individual Defendants in Bronx County Supreme Court and the Federal District Courts for the Southern and Eastern Districts of New York are matters of public record.

149.   The 83 aforementioned CCRB allegations concerning the Individual Defendants are matters of public record.

150.    On information and belief, Defendant City of New York was in receipt of multiple Notices of Claim concerning Defendants Rivera, Mahon, and Campbell prior to the incident that is the subject of this complaint.

151.    Despite such notice, Defendant City of New York retained, and continues to retain, Defendants Rivera, Mahon, and Campbell. It failed, and continues to fail, to adequately supervise or discipline them.

152.    This policy, custom, or usage demonstrates a deliberate indifference to the civil rights of New Yorkers, including T.S.

153.    This policy, custom, or usage proximately caused the Individual Defendants to unlawfully stop, search, assault, and injure T.S.

### CAUSES OF ACTION

### FIRST CLAIM
### 42 U.S.C. § 1983: Fourth and Fourteenth Amendments
### Unlawful Search & Seizure
### Against Defendants McKnight, Rivera, Mahon, and Campbell

154.    Plaintiff realleges the preceding paragraphs as if set forth here.

155.    On September 1, 2020, Defendants McKnight, Rivera, Mahon, and Campbell deprived T.S. of his constitutional rights under color of law and conspired to deprive him of such rights.

156.    The stop and detention of T.S. was wrongful and constituted a seizure under the Fourth Amendment to the United States Constitution.

157.    The search of T.S.'s person was wrongful and constituted a search under the Fourth Amendment to the United States Constitution.

158.    The search and/or seizure of T.S.'s belongings was wrongful and constituted a search and/or seizure under the Fourth Amendment to the United States Constitution.

159.    On information and belief, Defendant Campbell, the highest-ranking member of service present and the driver of the vehicle, ordered the stop, detention, search, and/or seizure of T.S.

160.    On September 1, 2020, in violation of clearly established law, Defendants stopped and seized T.S. without cause, consent, or any objectively reasonable suspicion of wrongdoing; searched T.S. without cause, consent, or any objectively reasonable suspicion T.S. was either armed or dangerous; seized T.S.'s belongings without cause or consent; and searched T.S.'s belongings without cause or consent, proximately causing injury to T.S.

161.    At all relevant times, T.S. had a right clearly established under the Fourth Amendment to the United States Constitution and enforceable against the States through the Due Process Clause of the Fourteenth Amendment to be free from unreasonable searches and seizures.

162.    At all relevant times, Defendants were acting under color of state law.

163.    The conduct of Defendants was willful, wanton, and reckless.

164.    Defendants' conduct deprived T.S. of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

165.    Defendants McKnight, Rivera, Mahon, and Campbell are liable to T.S. under 42 U.S.C. § 1983 for the damages hereinbefore alleged.

## SECOND CLAIM
### 42 U.S.C. § 1983: Fourth and Fourteenth Amendments
### Failure to Intervene
### Against Defendants McKnight, Rivera, Mahon, and Campbell

166.    Plaintiff realleges the preceding paragraphs as if set forth here.

167.    On September 1, 2020, Defendants McKnight, Rivera, Mahon, and Campbell deprived T.S. of his constitutional rights under color of law, failed to intervene in aforementioned deprivations, and conspired to deprive him of such rights.

168.    On September 1, 2020, Defendants were aware of multiple violations of T.S.'s constitutional rights, had a reasonable opportunity to intervene, and chose not to do so in contravention of clearly established law, proximately causing injury to T.S.

169.    At all relevant times, Defendants were acting under color of state law.

170.    The conduct of Defendants was willful, wanton, and reckless.

171.    Defendants McKnight, Rivera, Mahon, and Campbell are liable to T.S. under 42 U.S.C. § 1983 for the damages hereinbefore alleged.

## THIRD CLAIM
### Assault and Battery in Violation of New York State Law
### Against Defendants McKnight, Rivera, Mahon, and City of New York

172.    Plaintiff realleges the preceding paragraphs as if set forth here.

173.    On September 1, 2020, Defendants McKnight, Rivera, and Mahon committed assault and/or battery against T.S.

174.    Defendants intentionally placed Plaintiff in fear of imminent, harmful or offensive contact when they stopped, surrounded, and manhandled T.S. and his belongings, thereby proximately causing injury to T.S.

175.    Defendants made an intentional attempt, displayed by violence or threatening gesture, to do injury to and commit a battery upon T.S.'s person when they

stopped, surrounded, and manhandled T.S. and his belongings, thereby proximately causing injury to T.S.

176.    Defendants' assaults and batteries were without provocation by T.S.

177.    Defendants McKnight, Rivera, and Mahon, and Defendant City of New York, are liable to T.S. for the damages hereinbefore alleged.

## FOURTH CLAIM
### False Imprisonment in Violation of New York State Law
### Against Defendants McKnight, Rivera, Mahon, and City of New York

178.    Plaintiff realleges the preceding paragraphs as if set forth here.

179.    On September 1, 2020, Defendants McKnight, Rivera, and Mahon falsely imprisoned T.S.

180.    Defendants intentionally confined T.S., such that T.S. was aware of the confinement, without the consent of T.S. or authority or applicable privilege, thereby proximately causing injury to T.S.

181.    Defendants McKnight, Rivera, and Mahon, and Defendant City of New York, are liable to T.S. for the damages hereinbefore alleged.

## FIFTH CLAIM
### 42 U.S.C. § 1983: Fourth and Fourteenth Amendments
### Failure to Discipline/Supervise
### Against Defendant City of New York

182.    Plaintiff repeats and reallege the preceding paragraphs as if set forth here.

183.    Defendant City of New York has a policy, custom, or usage of failing to adequately discourage NYPD officer's future constitutional violations by retaining and/or failing to discipline or supervise NYPD officers—even those, like the Individual Defendants, with egregious, extensive, and well-documented records of misconduct.

184.    That policy, custom, or usage was a moving force behind the violation of T.S.'s Fourth and Fourteenth Amendment rights.

185.    That policy, custom, or usage proximately caused T.S.'s injuries.

186.    Defendant City of New York is liable to T.S. under 42 U.S.C. § 1983 for the damages hereinbefore alleged.

**SIXTH CLAIM**
**Negligent Retention/Supervision in Violation of New York State Law**
**Against Defendant City of New York**

187.    Plaintiff repeats and realleges the preceding paragraphs as if set forth here.

188.    Defendant City of New York failed to use reasonable care in the retention and supervision of Defendants Rivera, Mahon, and Campbell.

189.    Defendant City of New York knew, or should have known in the exercise of reasonable care, the propensities of Defendants Rivera, Mahon, and Campbell to engage in the wrongful conduct hereinbefore alleged.

190.    Defendant City of New York's failure to exercise reasonable care in the retention and supervision of Defendants Rivera, Mahon, and Campbell proximately caused T.S.'s injuries.

191.    Defendant City of New York is liable to T.S. for the damages hereinbefore alleged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.    Compensatory damages in an amount to be determined at trial;

B.    Punitive damages against all Defendants except the City of New York in an amount to be determined at trial;

C.    Reasonable costs and attorneys' fees under 42 U.S.C. § 1988;

D.   Pre- and post-judgment interest to the fullest extent permitted by law; and

E.   Any additional relief the Court deems just and proper.

Dated:     April 5, 2021
           New York, New York

KAUFMAN LIEB LEBOWITZ
& FRICK LLP

/s/ Douglas E. Lieb
Douglas E. Lieb
Adam Strychaluk*

*Law graduate pending admission*

10 E. 40th Street, Suite 3307
New York, New York 10016
(212) 660-2332
dlieb@kllf-law.com

*Counsel for Plaintiff*

27